**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Matthew Hufnus, Individually and on Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | **COMPLAINT AND JURY DEMAND** |
| v. | |
| | **PUTATIVE CLASS ACTION** |
| Wing Tel Inc., a New York corporation, | |
| Defendant. | |

## INTRODUCTION

1.      Plaintiff Matthew Hufnus ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant Wing Tel, Inc. ("Wing" or "Defendant"), in negligently and/or willfully using an automatic telephone dialing system to call Plaintiff on Plaintiff's cellular telephone, without Plaintiff's express consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., ("TCPA"), thereby invading Plaintiff's privacy.  Plaintiff alleges the following upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

2.      The TCPA was designed to prevent calls and text messages like the ones described herein, and to protect the privacy of citizens like Plaintiff.  "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA."  Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 744 (2012).

3.      In enacting the TCPA, Congress intended to give consumers a choice as to how corporate and similar entities may contact them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub. L. No. 102–243, § 11. In support of this, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Id. at § 12; see also Martin v. Leading Edge Recovery Solutions, LLC, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

4.      Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." Id. at §§ 12-13.

5.      The TCPA also expressly applies to unsolicited faxes as well as other forms of media such as text messages.

6.      Congress recognized that not only can unsolicited calls, faxes, and text messages be a nuisance, but also may cause the receiver of the unsolicited communications to incur actual out-of-pocket losses, such as for the use of paper and toner for unsolicited faxes.

7.      With the advancement of technology, numerous courts have recognized the TCPA's applicability to unsolicited text messages to persons' cellular telephones.

8.      Persons, like Plaintiff herein, have no control to stop unsolicited and unwanted text messages to their cell phones.

9.     Every transmission of a text message uses data, and the longer the text is, the more data is used.

10.    Once an unsolicited text message is received, not only is it a nuisance to the receiver, but as importantly, that receiver is forced to incur unwanted message and/or data charges from their cell phone carrier.

11.    As set forth herein, that is exactly what occurred to Plaintiff and other members of the putative class.

12.    Plaintiff and the members of the proposed class received unsolicited sales text messages from Defendants, and consequently incurred additional message and/or data charges to their cell phone accounts, all because Defendants wished to advertise and market their products and services for their own benefit.

## JURISDICTION AND VENUE

13.    This Court has federal question jurisdiction because this case arises out of violations of federal law.

14.    Venue is proper in the United States District Court for the Southern District of New York pursuant to 18 U.S.C. § 1391(b) and 1441(a) because Defendant is subject to personal jurisdiction in New York County, New York and because Defendant sent the unlawful text messages at issue herein from New York, New York.

## PARTIES

15.    Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of Illinois.  Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

16.     Defendant is a Delaware corporation which principally operates in New York County, New York, however, Defendant markets its goods and services throughout the state.

## THE TCPA

17.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

18.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

19.     The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs.*, LLC, 132 S. Ct. 740, 744 (2012).

20.     In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

21.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

22.     A defendant must demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,*

30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

23.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

## FACTS

19.     On or about December 9, 2019, Defendant or their agents, used an automated text messaging platform to transmit the following marketing text messages to Plaintiff's cellular telephone ending in 2578 ("2578 Number"):



> The sim card is free!
> You wouldnt have to pay
> anything today, the only
> payment would be when
> you get that sim card and
> want to get it activated 🙌
>
> Payment is due when you
> activate and you're never
> locked into any long-term
> contract. That payment
> would only be a bill
> payment that covers you
> for the full month! 💰



> You just have to pay the
> price of the plan(s) you've
> selected plus tax! No
> hidden fees or charges!

So what's the $50 credit?

No thanx I'm not
interested!

Mon 7:59 PM · Delivered

20.     The text messages constitute telemarketing/advertising because they promote Defendant's business, goods and services.

21.     Specifically, the text messages offer "$50 in credits if" Plaintiff joined Defendant's service and states that "the only payment would be" when Plaintiff wants to activate a "sim card".

22.     Plaintiff is the subscriber and sole user of the 2578 Number.

23.     At no point in time did Plaintiff provide Defendant with his prior express written consent to be contacted by text message on his cellular phone using an automatic telephone dialing system for advertising/marketing purposes.

24.     Defendants were required to obtain Plaintiff's "prior express consent," as defined under the TCPA, before transmitting the text messages.

25.     Plaintiff further alleges that Defendant, or their agent, sent the above text messages not only to Plaintiff, but also to numerous other individuals, on their cellular telephones, without obtaining their prior express written consent.

26.     The number used by or on behalf of Defendant (844-203-2271) to transmit the text messages is known as a "long code," a standard 10-digit phone number that enabled Defendant to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

27.     Long codes work as follows:  Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic.  These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

28.     The impersonal and generic nature of Defendant's text messages, demonstrates that Defendant utilized an ATDS in transmitting the messages.

29.     Further, on December 17, 2019, Plaintiff replied back "[s]top" to the text messages and immediately received the following auto-reply from Defendant:

2:53 PM

STOP

NETWORK MSG: You replied with the word "stop" which blocks all texts sent from this number.

Text back "unstop" to receive messages again.

2:53 PM

This auto-reply was transmitted automatically without human intervention in response to Plaintiff's "stop" request. Defendant's use of auto-reply functionality further demonstrates that Defendant utilized an ATDS to text message Plaintiff.

30.     The texts were not sent to Plaintiff and the putative class for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

31.     To send the text messages, Defendant used a messaging platform (the "Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

32.     The Platform has the capacity to store telephone numbers.

33.     The Platform has the capacity to generate sequential numbers.

34.     The Platform has the capacity to dial numbers in sequential order.

35.     The Platform has the capacity to dial numbers from a list of numbers.

36.     The Platform has the capacity to dial numbers without human intervention.

37.     The Platform has the capacity to schedule the time and date for future transmission of text messages.

38.     To transmit the messages at issue, the Platform automatically executed the following steps:

(1) The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;

(2) The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content;

8

(3) Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.

(4) Upon receipt of each packet, the SMS aggregator transmitted each packet -- automatically and with no human intervention -- to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant. Each mobile carrier then sent the message to its customer's mobile telephone.

39.    The above execution of Defendant's instructions occurred seamlessly, with no human intervention, and almost instantaneously. Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

40.    The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



41.    Defendant's unsolicited marketing text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that he has wasted approximately five seconds reviewing each of Defendant's unwanted messages.

42.    Furthermore, Defendant's text message took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited text messages like Defendant's poses a real risk of

ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that text message solicitations like the ones sent by Defendant present a "triple threat" of identity theft, unwanted cell phone charges, and slower cell phone performance).

43.    Defendant's text message also can slow cell phone performance by taking up space on the recipient phone's memory. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that spam text messages can slow cell phone performance by taking up phone memory space).

44.    Lastly, the text messages caused the following harms, including invasion of privacy, nuisance and, intrusion on seclusion.  Defendant's text message also inconvenienced Plaintiff and caused disruption to his daily life.  Plaintiff received the text messages when he was home and the audible ring from Defendant's text messages disturbed his domestic peace.

45.    As outlined herein, the unsolicited commercial texts sent by Defendant or their agents to Plaintiff and the putative class violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

46.    Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a proposed class defined as:

> **All persons in the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment from Defendant's or anyone on Defendant's behalf, to said persons cellular telephone number, advertising Defendants' services.**

47.    The class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

48.     The exact number and identities of the persons who fit within the proposed class are ascertainable, in that Defendant maintains written and electronically-stored records of all texts that were sent, the dates they were sent, and the telephone numbers to which they were sent.

49.     The proposed class is composed of over 1,000 persons.

50.     The claims in this action arise exclusively from Defendants' uniform policies as alleged herein, from uniformly-worded texts sent by Defendants or their agents via an "automatic telephone dialing system."

51.     No violations alleged are a result of any oral communications or individualized interaction between any class member and Defendant.

52.     There are common questions of law and fact affecting the rights of the class members, including, inter alia, the following:

   a)  Whether Defendant or their agents sent text messages to the cellular telephones of Plaintiff and the class;

   b)  Whether Defendant obtained express written consent from Plaintiff and the class before sending such text messages;

   c)  Whether Defendant's uniform policies and common course of conduct, as alleged herein, violated the TCPA;

   d)  Whether Plaintiff and the class are entitled to damages arising from Defendant's conduct alleged herein; and

   e)  Whether Plaintiff and the class are entitled to an order for injunctive and declaratory relief, enjoining Defendant from carrying on the policies alleged herein.

53.     Plaintiff is a member of the class he seeks to represent.

54.     The claims of Plaintiff are not only typical of all class members, they are identical in that they arise from Defendants' uniform policies and form texts and are based on the same legal theories of all class members.

55.    Plaintiff has no interest antagonistic to, or in conflict with, the class.

56.    Plaintiff will thoroughly and adequately protect the interests of the class, having retained qualified and competent legal counsel to represent himself and the class.

57.    Defendants have acted and refused to act on grounds generally applicable to the class, thereby making appropriate injunctive and declaratory relief for the class as a whole.

58.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

59.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, inter alia, the damages suffered by each class member were less than $500 per person and individual actions to recoup such an amount are not economically feasible.

60.    Common questions will predominate, and there will be no unusual manageability issues.

## COUNT I

### NEGLIGENT VIOLATIONS OF THE TCPA, 47 U.S.C. § 227, et seq.

63.    Plaintiff incorporates by reference all of the above paragraphs of his Complaint as though fully stated herein.

64.    Defendant – or third parties directed by Defendant – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class.

65.    These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

66.    Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

67.    As a result of Defendants' negligent violations of 47 U.S.C. § 227, et seq., Plaintiff and the class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

68.    Plaintiff and the class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### COUNT II

**KNOWING AND/OR WILLFUL VIOLATIONS**
**OF THE TCPA, 47 U.S.C. § 227, et seq.**

67.    Plaintiff incorporates by reference all of the above paragraphs of his Complaint as though fully stated herein.

68.    Defendant – or third parties directed by Defendant – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class.

69.    These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior

express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

70.    Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

71.    The foregoing acts and omissions of Defendants constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, et seq.

72.    As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, et seq., Plaintiff and the class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

73.    Plaintiff and the class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff and members of the class respectfully pray for the following relief:

A.    Certification of the class under Fed. R. Civ. P. 23;

B.    On the First Count, as a result of Defendants' negligent violations of 47 U.S.C. § 227(b)(2)(D), Plaintiff and each member of the Class is entitled to and requests five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

C.    On the Second Count, as a result of Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(2)(D), Plaintiff and each member of the Class is entitled to

14

and requests treble damages, as provided by statute, up to one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C);

D.  An Order, pursuant to 47 U.S.C. § 227(b)(3)(A), enjoining Defendant from violating 47 U.S.C. § 227(b)(2)(D);

E.  Attorney's fees and costs; and

F.  Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of himself and all others similarly situated, demands a trial by jury on all questions of fact raised by the Complaint.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the communication or transmittal of the text messages as alleged herein.

Date: February 7, 2020

**DeNITTIS OSEFCHEN PRINCE, P.C.**

By:

Ross H. Schmierer, Esq.
Stephen P. DeNittis, Esq.
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
(T): (856) 797-9951
rschmierer@denittislaw.com

**HIRALDO, P.A.**
Manuel S. Hiraldo, Esquire
(*Pro Hac Vice* Application Forthcoming)
401 E. Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
(T): (954) 400-4713
mhiraldo@hiraldolaw.com

*Attorneys for Plaintiff*

16